[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 06-14120

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 14, 2008
THOMAS K. KAHN
CLERK

Agency Nos.  ARB 03-002 & ARB 03-003

SHARYN ERICKSON,

Petitioner,

versus

UNITED STATES DEPARTMENT OF LABOR,

Respondent.

Petitions for Review of a Decision of the
Department of Labor

**(July 14, 2008)**

Before BARKETT and FAY, Circuit Judges, and ANTOON,[*] District Judge.

PER CURIAM:

Petitioner Sharyn Erickson appeals from two final orders of the Department

_____

[*]Honorable John Antoon II, United States District Judge for the Middle District of
Florida, sitting by designation.

of Labor's Administrative Review Board ("ARB")[1] dismissing her whistleblower claims under six environmental statutes.[2] Erickson contends the ARB's conclusions are not supported by substantial evidence. We affirm.

## I.

---

[1]The Secretary of Labor has delegated to the Administrative Review Board the authority to review recommended decisions of administrative law judges in cases such as this one. See 29 C.F.R. § 24.110(a).

[2]Erickson filed her complaints under the employee protection provisions of the Clean Air Act ("CAA"), 42 U.S.C. § 7622; the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300j-9(i); the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1367; the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2622; the Solid Waste Disposal Act ("SWDA"), 42 U.S.C. § 6971; and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9610. With the exception of CERCLA, each of these statutes expressly grants jurisdiction to the circuit courts of appeals to review the Secretary's orders. See 42 U.S.C. § 7622(c)(1); 42 U.S.C. § 300j-9(i)(3)(A); 33 U.S.C. §§ 1367(b) & 1369(b)(1); 15 U.S.C. § 2622(c)(1); 42 U.S.C. §§ 6971(b) & 6976(b). CERCLA, however, grants exclusive jurisdiction to federal district courts. See 42 U.S.C. §§ 9610(b) & 9613(b). Both parties assert that this Court has jurisdiction to review the orders even insofar as they arise under CERCLA because all of Erickson's allegations arise from a common factual background and are nonspecific to the statutes under which she brings them. Other circuits have agreed with this position and have reviewed decisions of the Department of Labor where CERCLA was one of the statutes involved. See Ruud v. United States Dep't of Labor, 347 F.3d 1086, 1090 (9th Cir. 2003) ("We hold that the court of appeals should entertain a petition to review an agency decision made pursuant to the agency's authority under two or more statutes, at least one of which provides for direct review in the courts of appeals, where the petition involves a common factual background and raises a common legal question."); accord Anderson v. United States Dep't of Labor, 422 F.3d 1155, 1157 n.3 (10th Cir. 2005) (noting Ruud and agreeing that it had jurisdiction to review entire case involving whistleblower claims under seven environmental statutes, one of which was CERCLA). This circuit has not previously had occasion to address this question, but we now join these other circuits and hold that we have jurisdiction to review this case in its entirety.
The ARB determined that the government's sovereign immunity has been waived with respect to the SWDA and the CAA, and it proceeded with the case under those two statutes. Erickson asks us to determine whether sovereign immunity has been waived under all six of the environmental statutes under which she brings her claims, but we decline to do so.

2

Erickson began her employment with the Environmental Protection Agency ("EPA") in 1989 as a contract specialist with a GS-12 pay grade in the Procurement Section of EPA's Region 4 in Atlanta, Georgia. From 1993-2003, Erickson engaged in numerous actions that she contends amount to protected activities under six environmental statutes, including: publicizing her concerns and findings about the feasibility of cleanup at a Superfund site; writing letters to Congressmen regarding an investigation of her that was conducted by the EPA Office of the Inspector General ("OIG"); providing information to Congress about potential Freedom of Information Act ("FOIA") violations; and filing two whistleblower complaints.

In her first whistleblower action ("Erickson I"), which involved eleven complaints filed between 1998 and 2002, Erickson alleged that the EPA retaliated against her for her protected activities by, inter alia: removing two contracts from her; denying her a promotion to GS-13 after a desk audit; detailing her to the Grants section and removing additional contracting duties; initiating an OIG investigation of her activity on a Superfund project; detailing her to the Information Management Branch ("IMB"), not giving her work to do, and suspending her contract warrant; permanently assigning her to IMB; failing to inform her of the results of the OIG investigation and failing to respond to her

FOIA request for the investigative report; placing and keeping her in the position of Information Resources Coordinator, for which she allegedly was unqualified, and "idling" her in that position by underutilizing her; failing to cooperate and share information with her; and "shunning" her.

An administrative law judge ("ALJ") conducted a twelve-day evidentiary hearing regarding the first whistleblower complaint in May and June 2002. On September 24, 2002, the ALJ issued a Recommended Decision and Order ("RDO") concluding that Erickson engaged in protected activity and that because of that activity, the EPA retaliated against her by canceling her contracting warrant, transferring her out of her career field, referring her to OIG, confiscating documents, declining to reveal the results of the OIG investigation to her, placing her in a job for which she was not qualified, and creating a hostile work environment for her. The ALJ recommended that Erickson be reinstated as a GS-13 contract officer or be awarded front pay and that she be awarded $50,000 in compensatory damages and $225,000 in punitive damages.

Erickson's second whistleblower action ("Erickson II") involved seven complaints filed in 2002 and 2003. Erickson alleged that the EPA engaged in retaliation against her by giving her impossible job duties, "idling" her, undermining her authority and withholding information, not selecting her for six

4

contracting positions, and failing to place her on the eligibility list for two contracting positions. The same ALJ who presided over Erickson I conducted a hearing in Erickson II in May and July 2003 and issued his RDO on November 13, 2003.

Although the ALJ rejected many of the Erickson II allegations, he concluded that the EPA subjected Erickson to adverse action and harassment when it assigned her job duties for which she lacked expertise, withheld information she needed to perform her job, "idled" her, and failed to implement any of the actions recommended in the Erickson I RDO, including restoring her to a contracting position. The ALJ again recommended reinstatement to a GS-13 contract officer position, $50,000 in compensatory damages, and $225,000 in punitive damages.

The ARB reviewed the RDO in Erickson I and issued its Final Decision and Order ("FDO") on May 31, 2006. The ARB agreed with some of the findings of the ALJ but disagreed with others, ultimately concluding that Erickson did not prevail on any of her whistleblower complaints because they were either time-barred, did not involve an adverse action, or lacked the requisite causal connection to establish retaliation.[3] The ARB thus dismissed all of the Erickson I complaints.

---

[3]In large part, the ARB assumed, without deciding, that Erickson's actions qualified as "protected activity" but then ultimately found no merit to her claims. In her brief, Erickson asks – in the event that we reverse the ARB – for a ruling as to whether her activities indeed qualified

The ARB also reviewed the Erickson II RDO. It issued an FDO on October 31, 2006, dismissing all of the Erickson II complaints. The ARB found that Erickson did not meet her burden of proving by a preponderance of the evidence that the EPA retaliated against her. Erickson has appealed from both of the FDOs.

## II.

The standards for our review of the ARB's FDOs are those of the Administrative Procedure Act. See Fields v. United States Dep't of Labor Admin. Review Bd., 173 F.3d 811, 813 (11th Cir. 1999). The ARB's decisions will be upheld unless they are "unsupported by substantial evidence or . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. (citing 5 U.S.C. § 706(2)(A)).

We review the ARB's legal conclusions de novo, and on factual matters we examine the ARB's orders to determine if they are supported by substantial evidence. Stone & Webster Eng'g Corp. v. Herman, 115 F.3d 1568, 1571 (11th Cir. 1997). "The substantial evidence test is no more than a recitation of the application of the 'arbitrary and capricious' standard to factual findings." Fields, 173 F.3d at 813. "The reviewing court does not reweigh the evidence or substitute

---

as protected activity. In light of our affirmance of the ARB on the merits of Erickson's claims, however, such a determination is unnecessary.

6

its judgment for that of the ARB, but reviews the entire record to determine if the decision reached is reasonable and supported by substantial evidence." Id.

The substantial evidence "standard encompasses the requirement that the Board, as an adjudicator, engage in reasoned decisionmaking. That is, 'the process by which [the Board] reaches [a] result must be logical and rational.'" NLRB v. Gimrock Constr., Inc., 247 F.3d 1307, 1309 (11th Cir. 2001) (quoting Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 374 (1998)) (citation omitted) (alteration in original). "This Court must 'examine carefully both the Board's findings and its reasoning, to assure that the Board has considered the factors which are relevant' to its decision." Id. (quoting Ona Corp. v. NLRB, 729 F.2d 713, 719 (11th Cir. 1984)).

Where the ARB disagrees with the ALJ on "questions of fact and credibility, the court may examine the evidence more critically in determining whether there is substantial evidence to support the [ARB's] decision. Bechtel Constr. Co. v. Sec'y of Labor, 50 F.3d 926, 933 (11th Cir. 1995). However, such disagreements do not "require[ us] to choose between the ALJ's and [ARB's] determinations." Id. "Ultimately, . . . the decision is the [ARB]'s. We ensure only that the [ARB's] conclusion, if different from the ALJ's, is 'supported by articulate, cogent, and reliable analysis.'" Stone & Webster, 115 F.3d at 1572

7

(quoting Bechtel, 50 F.3d at 932-33) (citation and further internal quotation omitted). "While the Board may reject the ALJ's factual inferences, the Board has an independent obligation to explain clearly its reasons for doing so." Gimrock, 247 F.3d at 1312 (internal cross-reference omitted). "The Board's decision cannot be reversed when it merely draws a different inference than that drawn by the ALJ from established facts, provided there is substantial evidence" to support the determination the ARB made. NLRB v. Ridgeway Trucking Co., 622 F.2d 1222, 1224-25 (5th Cir. 1980).

## III.

Substantial evidence in the record supports the ARB's FDOs in Erickson I and Erickson II. The ARB disagreed with the ALJ on several points and ultimately rejected the ALJ's finding of retaliation. Most of the ARB's disagreements pertained to inferences to be drawn from the evidence, and where the ARB rejected the ALJ's conclusions it duly explained its reasons for doing so. This is all that is required by the principles of review involved in this type of proceeding. Affording the ARB the deference it is owed, its determination of the merits of Erickson's whistleblower claims in both Erickson I and Erickson II is supported by substantial record evidence and is reasonable.

Accordingly, the decisions of the ARB are **AFFIRMED**.

8