[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13998

Non-Argument Calendar

_____

ANNECIA M. FORT,

Petitioner,

versus

U.S. DEPARTMENT OF LABOR,
ADMINISTRATIVE REVIEW BOARD,
LANDSTAR TRANSPORTATION LOGISTICS, INC.,

Respondents.

_____

Petition for Review of a Decision of the
Department of Labor

Agency No. ARB2018-0026

_____

Before JORDAN, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

Proceeding pro se, Annecia Fort alleged that her employer, Landstar Transportation Logistics, Inc., retaliated against her, in violation of the Surface Transportation Assistance Act, 49 U.S.C. section 31105. She petitions us to review the affirmance of the summary decision for Landstar. We deny her petition.

## FACTUAL BACKGROUND

From November 2004 to October 2015, Fort worked for Landstar as a Log Compliance Representative. In this position, Fort made sure that Landstar's truck drivers complied with Department of Transportation regulations about hours of service. The three incidents that allegedly constituted Fort's protected activity occurred between November 2014 and August 2015.

First, in November 2014, Fort recommended that driver Michael Pease be disqualified from driving for Landstar because he had multiple log violations. Although Fort's immediate supervisor agreed with her recommendation, Compliance Director Mahal Cason, at an agent's request, sent Mr. Pease for retraining on the electronic logging device instead of disqualifying him. After learning that Mr. Pease got into two accidents in one day, Fort went above Director Cason's head to Mike Cobb, Vice President for Safety and

Compliance, and told him about her disqualification recommendation. Because Mr. Pease had two accidents on the same day, he was disqualified.

Second, in January 2015, Fort complained to Director Cason about how a driver's call was handled. About half of the Log Compliance Department, including Fort, was attending a training session when driver Jose Martinez called Fort back about training on the electronic logging device. Because Fort was in training and the department was short-staffed, an employee told Mr. Martinez to call back the next day and to use paper logs in the meantime. Fort thought that having a driver call back contradicted company policy, so she instructed the employee that it did, spoke with the supervisor who had approved the response, and reported the incident to Director Cason. Director Cason counseled the supervisor about managing employee availability to avoid being short-staffed, and she determined that the incident didn't violate any regulations.

And third, in August 2015, Fort told Vice President Cobb that a driver's record had been improperly changed. Landstar conducted a mock Department of Transportation audit of driver records and discovered that driver Andrea Hurddrobneck's logs showed that she had been in her sleeper berth for the past three weeks. Ms. Hurddrobneck simply forgot to log off when she took her truck in for repairs. Because she couldn't access her truck to log off in the usual way, an employee logged her off from Landstar's demonstration terminal. Landstar did not inform Ms.

Hurddrobneck that it remotely changed her status in the system until after it had done so.

Fort submitted a one-page complaint to human resources alleging that because she complained about the three incidents, Landstar retaliated against her by writing her up "with false accusations," fabricating a "demeaning annual review" for her, attempting to lie about events, and pursuing her "constructive termination." Sensing an irreparably "broken relationship" between Fort and the management in the Log Compliance Department, Landstar put Fort on leave, with full pay and benefits, so she could interview for positions elsewhere in the company. Eventually, Fort assumed the position of Carrier Qualifications Service Specialist, making the same pay as before.

## PROCEDURAL HISTORY

Fort filed a whistleblower screening form with the Occupational Safety and Health Administration. The Department of Labor construed the form as asserting that Landstar retaliated against Fort, in violation of the Act. After an investigation, the Department of Labor found "no reasonable cause to believe" that Landstar violated the Act. Fort appealed the Department's decision to the Office of Administrative Law Judges.

Landstar moved for summary decision. It argued that Fort could not show that she engaged in protected activity because the incidents with Mr. Pease, Mr. Martinez, and Ms. Hurddrobneck didn't involve Landstar's violation of federal law and because Fort

couldn't establish that she reasonably believed that Landstar was violating a motor vehicle safety regulation. Fort also couldn't establish an adverse employment action, Landstar said, because she didn't suffer any economic harm and because human resources—not a supervisor involved with the three incidents—put her on paid leave until she found another position in a different department in the company. And Landstar argued that Fort couldn't show causation because too much time passed between the alleged protected activity and adverse action for temporal proximity to support an inference of causation, because Landstar encouraged safety complaints and compliance with federal regulations, and because Landstar had legitimate nonretaliatory reasons for removing Fort from the Log Compliance Department: her deep resentments and "destructive influence on others."

The administrative law judge granted summary decision for Landstar because Fort couldn't show that she engaged in protected activity. A reasonable person with Fort's training and experience, the administrative law judge explained, wouldn't believe that any of the three incidents violated a motor vehicle regulation. As to the incident with Ms. Hurddrobneck, the administrative law judge said that "[a] reasonable person with more than a decade of experience in log compliance would not have an objectively reasonable belief" that Landstar had to get Ms. Hurddrobneck's "consent before correcting an obviously incorrect log." The regulation requiring a driver to confirm or reject a change to the driver's record of

6                    Opinion of the Court                    20-13998

duty status did not go into effect until six months after the incident with Ms. Hurddrobneck.

Fort appealed the summary decision to the Administrative Review Board, which affirmed.  The Board agreed with the administrative law judge that Fort failed to show any protected activity. It explained that "none of [Fort]'s reports concerned violations of the [Act] or safety related matters; rather, each complained-of incident had to do with electronic logging device problems and not safety matters."

Fort asked the Board to reconsider its affirmance, and it denied her request.  Fort petitioned us to review the Board's decision.[1]

---

[1] We asked the parties to address jurisdictional questions about whether the Board's summary decision affirmance was a final agency decision even though Fort did not receive a formal evidentiary hearing, whether we can construe Fort's petition as seeking review of the affirmance, and whether Fort's request for reconsideration of the affirmance tolled the time for her to petition for review.  After considering the parties' responses, we agree with the respondents that the Board's affirmance was a final agency decision, *Fields v. U.S. Dep't of Lab. Admin. Rev. Bd.*, 173 F.3d 811, 812 (11th Cir. 1999), *United States v. Cheramie Bo-Truc No. 5, Inc.*, 538 F.2d 696, 698 (5th Cir. 1976), and we can— and do—construe Fort's pro se petition as seeking review of that decision. And we agree with the Department that Fort's appeal is timely because her request for reconsideration tolled the period for her to petition us for review. *See Interstate Com. Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987) ("[T]he timely petition for administrative reconsideration stayed the running of the . . . limitation period until the petition had been acted upon by the [Board].").  Thus, we have jurisdiction to consider Fort's petition.

## STANDARD OF REVIEW

We review "agency action[s], findings, and conclusions" to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see* 49 U.S.C. § 31105(d).  We review the Department's legal conclusions de novo and its factual findings for substantial evidence.  *Stone & Webster Constr., Inc. v. U.S. Dep't of Lab.*, 684 F.3d 1127, 1132 (11th Cir. 2012).

## DISCUSSION

Fort contends that the Board erred in affirming the summary decision against her because the summary decision conflicted with the law and the evidence and because the Board credited Landstar's version of events over hers and overlooked that Landstar admitted to engaging in unacceptable behavior.  Landstar retaliated against Fort, she says, because she "reported unethical, unlawful events" like the incident with Ms. Hurddrobneck.  Fort also argues that Mr. Pease's "egregious behavior put public safety at risk," Landstar's "violations were performed with intent," and under *Dick v. Tango Transp.*, ARB No. 14-054, ALJ No. 2013-STA-60, slip op. at *7 (Dep't of Lab. Admin. Rev. Bd. Aug. 30, 2016), she didn't need to "complain about a specific safety regulation"; she just needed to complain "'related to' safety regulations."

The Act prohibits an employer from "discharg[ing,] . . . disciplin[ing,] or discriminat[ing] against an employee regarding pay, terms, or privileges of employment" because the employee "has

filed a complaint . . . related to a violation of a commercial motor vehicle safety or security regulation, standard, or order." 49 U.S.C. § 31105(a)(1)(A)(i). Here, a "violation" includes "an act reasonably perceived to be a violation." *Koch Foods v. Sec'y, U.S. Dep't of Lab.*, 712 F.3d 476, 482 (11th Cir. 2013). The employee has the initial burden of making a prima facie case that her protected activity "was a contributing factor in" the adverse employment action against her. 49 U.S.C. §§ 31105(b)(1), 42121(b)(2)(B)(i). To make a prima facie case, she must show: (1) she engaged in activity protected under the Act; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and adverse action. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (Family and Medical Leave Act); *Bechtel Constr. Co. v. Sec'y of Lab.*, 50 F.3d 926, 933 (11th Cir. 1995) (Energy Reorganization Act).

To establish protected activity, Fort had to show that she reasonably believed that Landstar violated a motor vehicle safety regulation. *Dick*, slip op. at *7. The belief had to be both subjectively and objectively reasonable. *Id.* To determine whether the belief was objectively reasonable, we consider the information available to a reasonable person in the same circumstances with the same training and experience as Fort. *Id.*

Although, under *Dick*, Fort didn't have to prove an actual violation of a specific safety regulation, she still had to show an objectively reasonable belief related to violations of safety regulations. *Id.* But she failed to do so. The incidents with Mr. Pease,

Mr. Martinez, and Ms. Hurddrobneck don't relate to safety violations, and a reasonable Log Compliance Representative with Fort's extensive work experience wouldn't believe that they do. Fort herself recognized that Director Cason didn't violate any safety regulations in sending Mr. Pease for retraining instead of disqualifying him. Fort described the incidents as violations of company policy, not federal regulations. She could have made a colorable argument that Landstar violated 49 C.F.R. section 395.30(d) when it corrected Ms. Hurddrobneck's obviously incorrect record without the driver's consent—if the regulation had been in effect at the time. But the regulation wasn't yet in effect, and a reasonable person in Fort's position wouldn't have believed it was. Thus, Fort failed to establish protected activity to make a prima facie case of retaliation.

Fort's other arguments lack merit. The Board properly applied the Act and viewed the record in the light most favorable to her. Substantial evidence supported the factual findings. And Landstar never admitted to violating a federal motor vehicle safety regulation with respect to the three complained-of incidents.

Because Fort didn't establish that she engaged in activity protected under the Act, the summary decision for Landstar was proper, and we deny her petition for review.

**PETITION DENIED.**