# United States Court of Appeals for the Federal Circuit

---

**ODYSSEY LOGISTICS & TECHNOLOGY CORP.,**
*Plaintiff-Appellant*

**v.**

**COKE MORGAN STEWART, ACTING UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND ACTING DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendant-Appellee*

---

2023-2077

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:22-cv-01061-PTG-WEF, Judge Patricia T. Giles.

---

Decided: March 6, 2025

---

ROBERT BAUER, Bauer & Joseph, Pittsburgh, PA, argued for plaintiff-appellant. Also represented by JOHN J. FARGO, Alexandria, VA.

CYNTHIA BARMORE, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, JOSHUA MARC SALZMAN; MAI-TRANG DUC DANG,

2          ODYSSEY LOGISTICS & TECHNOLOGY CORP. v. STEWART

MICHAEL S. FORMAN, FARHEENA YASMEEN RASHEED, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

————————————

Before DYK, REYNA, and STOLL, *Circuit Judges*.

DYK, *Circuit Judge*.

On February 7, 2020, this court affirmed a 2018 decision by the Patent Trial and Appeal Board ("Board" or "PTAB"), which in turn affirmed the examiner's rejection of claims 3–21 of U.S. Patent Application No. 11/678,021 (the "'021 application"). *In re Tarasenko*, 792 F. App'x 840 (Fed. Cir. 2020). Patent applicant Odyssey Logistics & Technology Corporation ("Odyssey") did not raise an Appointments Clause challenge on appeal in *Tarasenko*. Odyssey's constitutional challenge came more than a year later, after the Supreme Court issued its decision in *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021), on June 21, 2021.

On June 28, 2021, Odyssey filed a request for review by the Director of the United States Patent and Trademark Office ("PTO") of the Board's 2018 decision on the ground that the Board's decision was invalid under *Arthrex*, claiming entitlement to Director review as a remedy. After the PTO denied the request for Director review, Odyssey filed a complaint in district court requesting that the district court compel the Director to consider Odyssey's request. The district court granted the PTO's motion to dismiss, and Odyssey appealed. We affirm.

BACKGROUND

This case involves the effort by a patent applicant to require Director review of the Board's decision fourteen

months after this court issued its mandate affirming the Board's decision.

## I

Odyssey filed the '021 application, entitled "Web Service Interface for Transit Time Calculation," on February 22, 2007. The application stated that it related generally to online logistics and the planning and management of freight shipments by trucking companies and other carriers. Specifically, the application described a method wherein parties may exchange transit time information (i.e., the time it takes for cargo to move from one point to another) in real time over the internet. The application claimed that this internet-based method was superior to conventional information delivery methods because those existing methods required shippers seeking transit time information to call their logistics service provider or another third party.

On July 16, 2015, a patent examiner issued a Final Rejection of claims 3–13 of the '021 application, concluding that the claims were directed to the abstract idea of looking up transit times for a potential carrier and recited no more than implementing well-understood, conventional computer functions on a generic computer. The Board affirmed the rejection on August 21, 2018, explaining that "[b]ecause the claimed . . . system has no other function . . . except to send a request and receive a response, . . . [it] is merely a name for the source that supplies a request and receives a response, which does not transform the claimed method . . . into eligible subject matter." J.A. 228. On November 20, 2018, on request for rehearing, the Board rejected Odyssey's argument that "it had not been shown through evidence that it is well-understood, routine, and conventional for a . . . system to send and receive transit time requests via a web services interface." J.A. 246–47 (internal quotation marks and citation omitted).

Odyssey appealed to this court on January 17, 2019, and filed its opening brief on July 8, 2019. *See* Corrected Br. for Appellants, In re Tarasenko, No. 19-1453 (Fed. Cir. July 8, 2019), ECF No. 25. This court affirmed the Board's decision on February 7, 2020. *Tarasenko*, 792 F. App'x at 840. Our mandate issued on May 15, 2020.

## II

The Appointments Clause of the U.S. Constitution provides:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States . . . but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const., art. II, § 2, cl. 2.

Over the years, parties aggrieved by the actions of federal agencies have urged that the agencies' actions were unconstitutional because the deciding officers were "principal, not inferior, officers within the meaning of the Appointments Clause, and must therefore be appointed by the President with the advice and consent of the Senate." *Edmond v. United States*, 520 U.S. 651, 655–56 (1997). It is undisputed that Arthrex, Inc. raised precisely such a challenge before this court on October 19, 2018, arguing that PTAB administrative judges were principal officers and were required to be appointed by the President and confirmed by the Senate. *See* Br. for Appellant Arthrex, Inc. at 65, Arthrex, Inc. v. Smith & Nephew, Inc., No. 18-2140 (Fed. Cir. Oct. 19, 2018), ECF No. 18 ("[Administrative patent judges] are undoubtedly principal officers, but they are

not appointed according to the requirements of the Appointments Clause . . . .").

Odyssey does not dispute that it failed to raise an Appointments Clause challenge on direct review from January 17, 2019, to May 15, 2020, even after this court, during the pendency of Odyssey's appeal on October 31, 2019, determined that there was an Appointments Clause violation in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), *vacated and remanded sub nom. Arthrex*, 594 U.S. at 1.[1]

The Supreme Court granted certiorari on October 13, 2020. *See United States v. Arthrex, Inc.*, 141 S. Ct. 549 (2020). On June 21, 2021, the Supreme Court issued its decision in *Arthrex*, in which it held that administrative patent judges' unreviewable authority in inter partes

---

[1] On July 7, 2020, we also explained that this Appointments Clause challenge existed in connection with initial examinations as well as inter partes review proceedings. *In re Boloro Glob. Ltd.*, 963 F.3d 1380 (Fed. Cir. 2020), *cert. granted, judgment vacated sub nom. Iancu v. Luoma*, 141 S. Ct. 2845 (2021). There, the PTO conceded that under the Supreme Court's reasoning in *Freytag v. Commissioner*, 501 U.S. 868 (1991), "APJs were principal officers for purposes of all governmental functions of their office, even if they performed other functions that were subject to a greater degree of control." Supplemental Response at 3–4, In re Boloro Global Ltd., No. 19-2349 (Fed. Cir. May 27, 2020), ECF No. 33. Although the Supreme Court later vacated our precedential order in *Boloro* and remanded for consideration in light of its *Arthrex* decision, *see Luoma*, 141 S. Ct. at 2845, after which the case was voluntarily dismissed, it is undisputed that Odyssey had notice of the availability of the Appointments Clause argument in the context of initial examinations.

review proceedings violated the Appointments Clause. 594 U.S. at 17. To remedy this constitutional violation, the Court held that "[t]he Director has the authority to provide for a means of reviewing PTAB decisions" and "accordingly may review final PTAB decisions and, upon review, may issue decisions himself on behalf of the Board." *Id.* at 25. This remedy was different from the remedy of this court in our *Arthrex* decision. *See* 941 F.3d at 1338.

## III

One week after the Supreme Court's *Arthrex* decision, on June 28, 2021, Odyssey for the first time raised an Appointments Clause challenge by filing a request for Director review of the Board's 2018 decision. On August 25, 2022, the PTO responded in an unsigned email:

> Your request for Director review has been received. The request relates to an *ex parte* appeal but, "[a]t this time, the Office does not accept requests for Director review of . . . *ex parte* appeal decisions." Interim process for Director review § 8 ("Scope of Review"). The request, therefore, will not be considered.

J.A. 362.

On September 16, 2022, Odyssey filed a complaint in the United States District Court for the Eastern District of Virginia requesting that the court "[r]equir[e] the Director to promptly consider [Odyssey's] June 28, 2021[,] request for Director review of the PTAB Decision . . . and provide a written decision with the results of her review." J.A. 35. The district court dismissed the case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, explaining that Odyssey's complaint was "akin to a motion for the Director to reconsider . . . a matter, and in those cases the Director's decision on whether or not to do that is something that is

committed to the agency's discretion, and therefore judicial review of that decision is improper." J.A. 28.

Odyssey appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

The district court's legal conclusions, including dismissal under Rule 12, are reviewed de novo, and its factual findings are reviewed for clear error. *Banks v. United States*, 741 F.3d 1268, 1275 (Fed. Cir. 2014). The facts in this case are not in dispute.

Under the PTO's procedures, once this court has affirmed the rejection of a patent application's claims, the "proceedings in the case are considered terminated on the issue date of the . . . mandate." MPEP § 1216.01, pt. I.A. Because this court's mandate affirming the Board's decision issued on May 15, 2020, Odyssey's September 16, 2022, complaint before the district court was essentially a request for reconsideration or reopening of that final Board decision based on an intervening change in the law.[2] We conclude, without reaching the propriety of reconsideration of the Board's decision, that the PTO did not abuse its discretion in denying the request for Director review. We accordingly affirm the district court's dismissal of Odyssey's complaint.

Although there is no statute authorizing the PTO to reopen an earlier final Board decision, this court has long recognized that "administrative agencies possess inherent

---

[2] Odyssey appears to argue that the district court erred in determining that the Board's final decision in its initial examination was closed. *See* Appellant's Br. 27–29. But Odyssey does not dispute (nor could it) the plain language of MPEP § 1216.01, pt. I.A, or the fact that this court's mandate had already issued.

8        ODYSSEY LOGISTICS & TECHNOLOGY CORP. v. STEWART

authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so." *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008). This court and others have repeatedly held that an agency's reconsideration "must occur within a reasonable time." *Id.* at 1361; *accord Macktal v. Chao*, 286 F.3d 822, 826 (5th Cir. 2002) ("Reconsideration must also occur within a reasonable time after the first decision . . . ."); *Bookman v. United States*, 453 F.2d 1263, 1265 (Ct. Cl. 1972) (explaining that reconsideration must occur within a "short and reasonable time period").

We have also explained in previous cases that the principles animating Rule 60(b) of the Federal Rules of Civil Procedure can be a useful guide in determining the scope of an agency's inherent power to reconsider prior decisions. *See, e.g.*, *Home Prods. Intern., Inc. v. United States*, 633 F.3d 1369, 1377 (Fed. Cir. 2011) (explaining that "it is clear that, by analogy to Federal Rule of Civil Procedure 60(b), [an agency] lacks jurisdiction to grant a motion to reopen its proceedings while an appeal is pending"); *Herring v. Merit Sys. Prot. Bd.*, 778 F.3d 1011, 1018 (Fed. Cir. 2015) (considering Rule 60(b)(6) in deciding the propriety of reopening Merit Systems Protection Board proceedings).

Rule 60 "attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." 11 Wright & Miller, Federal Practice & Procedure § 2851 (3d ed.). Rule 60(b)(6) provides that a district court may relieve a party from a final judgement for "any other reason that justifies relief." The Supreme Court has explained that under Rule 60(b), a district court may reopen a final judgment even after the issuance of an appellate mandate, provided that the relief does not fall within the scope of that mandate. *See Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18–19 (1976). That is arguably the case here,

as our mandate in *Tarasenko* did not directly address the issue of the Appointments Clause in Board proceedings.

However, the Supreme Court has also identified several important limitations to a district court's ability to grant a Rule 60(b)(6) motion for relief, including that "Rule 60(b) . . . require[s] that the motion 'be made within a reasonable time.'" *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (quoting Fed. R. Civ. P. 60(c)(1)). And "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239 (1997). The Courts of Appeals have on occasion found that an intervening change in the law, in unusual circumstances, may justify relief. For example, Rule 60(b)(6) relief was found to be properly awarded in a case where a habeas petitioner diligently pursued his claim pro se and promptly filed his Rule 60(b) motion, *Bynoe v. Baca*, 966 F.3d 972, 985 (9th Cir. 2020), and in a case where forfeiture would result in inconsistent treatment of similarly situated victims of the same tort, *In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 357 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2875 (2014).

Because Rule 60 does not define "a reasonable time" with reference to Rule 60(b)(6), courts have recognized that the reasonableness of delay requires a case-by-case determination. "When a Rule 60(b)(6) motion is premised on a change in law, courts measure timeliness 'as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion, regardless of the time that has elapsed since the entry of judgment.'" *Bynoe*, 966 F.3d at 980 (alteration in original) (quoting *Clark v. Davis*, 850 F.3d 770, 780 (5th Cir. 2017)).

> The rationale for denying relief is particularly strong in cases in which a party had not bothered to appeal to challenge existing law and then hopes

> to benefit from the efforts of some other person's appeal. This . . . should never be considered an extraordinary circumstance under which equity would set aside a final judgment.

12 Moore's Federal Practice § 60.48.

Courts have thus generally found no extraordinary circumstances when the petitioner failed to raise their stated ground for relief even though the petitioner had knowledge that the ground was potentially available. The Ninth Circuit recently concluded that granting a Rule 60(b)(6) motion would be particularly inappropriate "where a party has displayed a 'lack of diligence'—in particular, by (a) failing to 'raise[] [the] issue' before the district court, (b) declining to lodge an appeal or 'file[] a petition for rehearing,' or (c) neglecting to seek 'certiorari review.'" *Fed. Trade Comm'n v. Hewitt*, 68 F.4th 461, 469 (9th Cir. 2023) (first alteration added, subsequent alterations in original) (quoting *Gonzalez*, 545 U.S at 536–37) (holding that an intervening Supreme Court decision did not constitute "extraordinary circumstances" in light of petitioner's forfeiture); *see also GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007); *Reform Party v. Allegheny Cnty. Dep't of Elections*, 174 F.3d 305, 312 (3d Cir. 1999) (en banc); *Medinol Ltd. v. Cordis Corp.*, 817 F. App'x 973, 979 (Fed. Cir. 2020) (nonprecedential).

Odyssey's claim is governed by these cases because it had notice of the *Arthrex* issue during the pendency of its appeal and made no effort to present this argument on appeal of the Board's 2018 decision. There is no question that Odyssey could have raised this challenge, and Odyssey concedes that it failed to do so. *See* Appellant's Br. 7–8. Odyssey waited fourteen months after the issuance of our May 2020 mandate affirming the Board's decision before making its request for Director review, despite its knowledge of the availability of the Appointments Clause challenge

addressed by this court in *Arthrex* in 2019 and the Supreme Court's grant of certiorari on October 13, 2020, months before its request for Director review. Odyssey provides no justification that would have permitted its delay.

We see no abuse of discretion by the PTO in denying such a request. To the extent that Odyssey argues that the constitutional nature of its challenge excuses its delay, it is mistaken.[3] Our previous decisions have recognized that an Appointments Clause challenge is not jurisdictional and must be timely presented and preserved.

We have repeatedly found that a party's failure to raise an Appointments Clause challenge in its opening brief constitutes forfeiture even when the argument was raised before the termination of direct appeal and immediately after our decision in *Arthrex*. *See, e.g., Ciena Corp. v. Oyster Optics, LLC*, 958 F.3d 1157, 1161 (Fed. Cir. 2020); *Customedia Techs., LLC v. Dish Network Corp.*, 941 F.3d 1173, 1175 (Fed. Cir. 2019) (per curiam); *Sanofi-Aventis Deutschland GMBH v. Mylan Pharm. Inc.*, 791 F. App'x 916, 928 n.4 (Fed. Cir. 2019) (nonprecedential); *see also Vivint v. Alarm.com Inc.*, 856 F. App'x 300, 304 (Fed. Cir. 2021) (nonprecedential) (finding forfeiture when the party failed to raise the issue in its first appeal). Odyssey's forfeiture

---

[3] We reject Odyssey's contention that the Supreme Court's decision in *Arthrex* was an intervening change in the law such that it would be an abuse of discretion to not set aside the prior decision. We have explained that forfeiture may be set aside due to a change in law only in the limited circumstance in "which controlling precedent precluded the district court from adopting an objection . . . before the Supreme Court" issued its decision. *In re Micron Tech., Inc.*, 875 F.3d 1091, 1098 (Fed. Cir. 2017). This was not the case here, as Odyssey was free to raise an Appointments Clause challenge and elected not to do so.

12        ODYSSEY LOGISTICS & TECHNOLOGY CORP. v. STEWART

is even clearer than those in the previous cases because it
<u>never</u> raised its Appointments Clause challenge on direct
appeal and only argued this point in its collateral challenge
to the Board's decision.[4]

Without reaching whether reconsideration of the
Board's decision would be appropriate in light of Odyssey's
forfeiture, we conclude that the PTO did not abuse its dis-
cretion in denying the request for review.  Accordingly, Od-
yssey's complaint failed to state a claim for relief.  We thus
affirm the district court's decision for failure to state a
claim, rather than for lack of subject matter jurisdiction.[5]

---

[4]    To the extent that Odyssey relies on the Supreme
Court's decision in *Interstate Commerce Commission v.
Brotherhood of Locomotive Engineers*, 482 U.S. 270 (1987),
for the proposition that the change in law brought about by
*Arthrex* constitutes "changed circumstances" such that "a
denial of petition to reconsider might be reviewable," Ap-
pellant's Br. 23, it is mistaken.  In *Locomotive Engineers*,
the Supreme Court explained that it was permissible for
courts to review the then-existing Commission's orders
when the "petition[] alleg[ed] new evidence or changed cir-
cumstances that rendered the agency's original order inap-
propriate."  482 U.S. at 278 (internal quotation marks and
citation omitted).  Odyssey does not allege any new evi-
dence or newly discovered factual dispute or comparable
change in circumstances that would have cast doubt on the
Board's original decision, and as such, *Locomotive Engi-
neers* is inapposite.
[5]    We disagree with the district court's determination
that it lacked subject matter jurisdiction to consider
whether the Board could properly reopen its previous deci-
sion because the issue is one of forfeiture, which is not ju-
risdictional because it may be excused.  *See, e.g.*, *Micron*,
875 F.3d at 1098.  And we have already held that an

*See Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("[E]ven though there was no basis for dismissal under Rule 12(b)(1), we may properly affirm the District Court's judgment pursuant to Rule 12(b)(6).").

## CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Odyssey's complaint, though for failure to state a claim for relief under Rule 12(b)(6) rather than for lack of jurisdiction under Rule 12(b)(1).

## **AFFIRMED**

---

Appointments Clause challenge is not jurisdictional. *Customedia*, 941 F.3d at 1175. We note the Supreme Court's admonition that the courts "have been less than meticulous" on "the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006).